UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20159-Civ-COHN
MAGISTRATE JUDGE P.A. WHITE

ANDREW HUTCHINSON,                    :

    Plaintiff,                      :

v.                                    :          REPORT OF
                                                 MAGISTRATE JUDGE
SANJAY RAZDAN, M.D.,                  :

    Defendant.                      :
_____

## I.  Introduction

Andrew Hutchinson filed a pro se civil rights action pursuant to 42 U.S.C. §1983, claiming that the defendant was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights and failed to properly advise him of the potential risks of treatment in violation of his right to be free from unjustified intrusions into his body. Plaintiff is seeking unspecified monetary damages. The plaintiff is proceeding in forma pauperis.

The sole defendant in this case is physician Sanjay Razdan, a urologist practicing at Kendall Regional Medical Center. Hutchinson was referred to Dr. Razdan by health care providers at Dade Correctional Institution. The plaintiff alleges in his Amended Complaint (DE# 73) that on a Saturday in May 2007 he noticed blood in his urine. During his first visit with medical personnel did not find blood in his urine. However, Hutchinson saw blood in his urine over the weekend. The following Monday a health care provider found that Hutchinson's urine contained blood. Hutchinson was referred to a senior health care provider and placed on an undisclosed medication. Hutchinson continued to have blood in his urine.

Hutchinson was referred to Dr. Razdan after the prison medical staff was unable to alleviate the problem.

Dr. Razdan examined Hutchinson and determined that he had bladder calcules, or bladder stones, and an enlarged prostate. Dr. Razdan advised Hutchinson that due to his serious medical conditions, including Hepatitis C and cirrhosis of the liver, it would be necessary to remove the stones by laser surgery. The surgery was performed on June 10, 2008 and the stones were removed. On October 14, 2008 Hutchinson returned to Dr. Razdan for surgery on his enlarged prostate. This surgery, Holmium Laser Enucleation and Ablation of the Prostate ("HoLEAP"), was performed on October 14, 2008.

Several months later Hutchinson returned to Dr. Razdan and informed the doctor that since the first surgery he had been unable to obtain an erection or ejaculate. Hutchinson claims that Dr. Razdan replied by stating, "Since you are never getting out of prison, there is no need to worry about making any babies."

Hutchinson's claim is that Dr. Razdan failed to inform him of the potential side effects and alternative means of treating his medical condition. He contends that if he had been informed of the potential side effects that he would have chosen a treatment that involved less risk. He argues that Dr. Razdan acted recklessly by failing to advise him of the risk that the laser surgery could result in the lose of the ability to have an erection or ejaculate. He further argues that Dr. Razdan was deliberately indifferent to this risk.

The Cause is now before the Court upon the defendant's Motion for Summary Judgment with supporting documentary exhibits,

affidavits, transcripts of depositions and medical records. (DE# 100). Plaintiff has filed a response to the defendants' motion for summary judgment with supporting facts and a memorandum.(DE# 111-113). The defendant has filed a reply. (DE# 114). The plaintiff has filed a second reply. (DE# 118). Both parties have filed pretrial statements. (DE# 106, 109).

II. <u>Summary Judgment Standard</u>

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>See</u> <u>Fed.R.Civ.P.</u> 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(<i>quoting</i> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)). <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

It is well accepted that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990). Accordingly,

the nonmoving party, even if a *pro se* prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(*citing* Anderson v. Liberty Lobby, Inc., 477 U.S. at 252). Of course, in making the determination whether genuine issues of material fact are present, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," see Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." See United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555, 1558 (11th Cir. 1990).

Hutchinson has been advised regarding the requirements under Fed.R.Civ.P. 56 for a proper response to the defendants' motion for summary judgment. (DE# 104). As indicated, the plaintiff filed pleadings in opposition with supporting exhibits.

### III. Facts

Before addressing the arguments presented in the motion for summary judgment, the undisputed facts must be reviewed.

4

Hutchinson, who is 61 years old, has been incarcerated in the Florida Department of Corrections since 1993. He is presently confined at Dade Correctional Institution. In May 2007 he noticed blood in his urine. He was initially treated by prison medical personnel, however when they were unable to correct the problem he was referred to an outside urologist, Dr. Razdan.

Hutchinson was first seen by Dr. Razdan on December 10, 2007. Dr. Razdan's made an initial diagnosis of urolithiasis meaning that stones had formed in the urinary system. On February 11, 2008 Dr. Razdan performed a cystoscopy which confirmed his initial diagnosis and led to a diagnosis of an enlarged prostate. Dr. Razdan recommended that Hutchinson undergo a cystoscopy and litholapaxy in order to remove the stones. The procedure was explained to Hutchinson who agreed to the procedure.

On June 10, 2008, Hutchinson signed a consent to the procedure which was then performed without incident. Dr. Razdan prepared an operative note explaining the procedure he had performed. This note reflected that Dr. Razdan believed the enlarged prostate was the underlying cause of the stone development.

In August 2008. Dr. Razdan recommended that Hutchinson undergo the HoLEAP procedure to address the underlying problem of the enlarged prostate. Both parties agree that there was some discussion of the different modes of treatment available, however Hutchinson claims that Dr. Razdan failed to discuss the possible risks of the HoLEAP procedure. (DE# 112, p. 6). Dr. Razdan, in his affidavit, states that Hutchinson was advised of the risks and benefits and alternative treatments. (DE# 100-5, p. 4).

5

The HoLEAP procedure was performed on October 14, 2008. It is undisputed that Hutchinson signed a consent form acknowledging that the following information had been explained to him: (1) the nature of the procedure; (2) the risks benefits and potential complications; (3) any alternative or options with the procedure; (4) potential problems related to recuperation; and (5) the likelihood of success of the operation. (DE# 112, p. 47). Dr. Razdan executed a form certifying that Hutchinson had been so informed. (DE# 100-5, p. 5). Dr. Razdan's contemporaneous notes indicate that the HoLEAP procedure was performed with no complications. (DE# 100-6, p. 28). His affidavit also states that the procedure was performed without incident. (DE# 100-5, p. 5).

On December 8, 2008 Hutchinson was seen by Dr. Razdan for follow up. (DE# 100-6, p. 33). According to Dr. Razdan's notes, Hutchinson was voiding his bladder well and was happy. (DE# 100-6, p. 33). Hutchinson again saw Dr. Razdan on April 6, 2009 and again reported that he was happy. (DE# 100-6, p. 35). On August 24, 2009 Dr. Julio Poveda prepared a consultation request due to Hutchinson's complaint of impaired ejaculation. (DE# 100-6, p. 36). Hutchinson was seen by Dr. Razdan on October 5, 2009, the notes from this appointment do not reflect any complaints of erectile dysfunction or lack of ejaculation. (DE# 100-6, p. 37).

On June 14, 2010 a consultation request was prepared based on the Hutchinson's complaint of painful urination and erectile dysfunction. (DE# 100-6, p. 40). Dr. Razdan saw Hutchinson on September 15, 2010. (DE# 100-6, p. 41). According to the contemporaneous notes Hutchinson complained of retrograde ejaculation, but had no problem with getting an erection. (DE# 100-6, p. 41). Dr. Razdan explained that retrograde ejaculation was

normal after HoLEAP and noted that Hutchinson understood this and
was happy. (DE# 100-6, p. 41).


        IV. <u>Eighth Amendment Deliberate Indifference Claim</u>

        The Eighth Amendment of the United States Constitution forbids
"cruel and unusual punishments." U.S. Const. amend. VIII. In the
prison context, "[t]he Eighth Amendment can give rise to claims
challenging specific conditions of confinement, the excessive use
of force, and the deliberate indifference to a prisoner's serious
medical needs." <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1303 (11th Cir.
2010)(citations omitted). <u>See also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97,
104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To establish an
Eighth Amendment claim for deliberate indifference to medical
needs, the plaintiff he must satisfy three components. <u>Goebert v.</u>
<u>Lee County</u>, 510 F.3d 1312, 1326 (11th Cir. 2007). First, the
plaintiff must meet the objective component by showing that he had
a serious medical need. <u>Id</u>. Second, he must satisfy the subjective
component by showing that the defendants were deliberately
indifferent to that need. <u>Id</u>. And, finally, he must show that his
injury was caused by the defendants' wrongful conduct. <u>Id</u>. Not
every claim of inadequate medical treatment rises to the level of
a constitutional violation. <u>Estelle</u>, 429 U.S. at 105, 97 S.Ct. at
291. An incarcerated individual must establish "more than ordinary
lack of due care" to succeed on an Eighth Amendment claim. <u>Whitley</u>
<u>v. Albers</u>, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251
(1986).


        "A medical need that is serious enough to satisfy the
objective component 'is one that has been diagnosed by a physician
as mandating treatment or one that is so obvious that even a lay
person would easily recognize the necessity for a doctor's

attention.'" <u>Goebert</u>, 510 F.3d at 1325, *quoting*, <u>Hill v. Dekalb</u>
<u>Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)(internal
quotation marks omitted). To show that the defendant was
deliberately indifferent to plaintiff's serious medical need,
plaintiff has to prove "(1) subjective knowledge of a risk of
serious harm; (2) disregard of that risk; (3) by conduct that is
more than gross negligence." <u>Townsend v. Jefferson County</u>, 601 F.3d
1152, 1158 (11th Cir. 2010)(alterations omitted)(*quoting* <u>Bozeman v.</u>
<u>Orum</u>, 422 F.3d 1265, 1272 (11th Cir. 2005)). <u>See also</u> <u>Goebert</u>, 510
F.3d at 1326-27. Stated differently, "[t]he plaintiff must show an
'objectively serious deprivation' of medical care by demonstrating
(1) 'an objectively serious medical need ... that, if left
unattended, poses a substantial risk of serious harm,' and (2) that
the prison official's response 'to that need was poor enough to
constitute an unnecessary and wanton infliction of pain, and not
merely accidental inadequacy, negligence in diagnosis or treatment,
or even medical malpractice actionable under state law.'" <u>Bingham</u>
<u>v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011), *quoting*, <u>Taylor v.</u>
<u>Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000).

   Treatment violates the Eighth Amendment only if it involves
"something more than a medical judgment call, an accident, or an
inadvertent failure," <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n.4
(5th Cir. 1980).[1] It must be "so grossly incompetent, inadequate,
or excessive as to shock the conscience or to be intolerable to
fundamental fairness." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th
Cir. 1991). <u>See also</u> <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th
Cir. 2002). A "complaint that a physician has been negligent in
diagnosing or treating a medical condition does not state a valid

---

[1]The Eleventh Circuit has adopted as binding precedent all decisions of the
former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit
B decisions rendered after October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d
1206, 1207 (11th Cir. 1981).

claim of medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. at 292. The Eleventh Circuit has held that conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. <u>See e.g.</u>, <u>Bingham</u>, 654 F.3d at 1176. A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." <u>Adams v. Poag</u>, 61 F.3d 1537, 1547 (11th Cir. 1995); <u>see also</u> <u>Waldrop v. Evans</u>, 871 F.2d at 1033 ("Mere medical malpractice, however, does not constitute deliberate indifference. Nor does a simple difference in medical opinion."). Of course, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. <u>Bingham</u>, 654 F.3d at 1176, *citing*, <u>Harris v. Coweta County</u>, 21 F.3d 388, 393 (11th Cir. 1994).

In his initial complaint Hutchinson claimed that Dr. Razdan performed a different procedure than had been contemplated. (DE# 1, p. 8). However, the allegations in the initial complaint are not supported by any of the evidence subsequently submitted. For example, the dates of the procedures are incorrect and the description of the treatments and purposes for each are confused. Hutchinson recognized these inconsistencies in his amended complaint and refers to his amended complaint as fully amended and supplementary of the original complaint. (DE# 73). Due to the numerous inconsistencies in the initial complaint the undersigned must discount those allegations and will address the claims raised in the amended complaint.

In the amended complaint Hutchinson contends that Dr. Razdan was aware of the risk of litholopaxy and HoLEAP yet did not warn him of the risk. He claims that Dr. Razdan disregarded the risk of retrograde ejaculation and failed to advise him of less risky procedures. He further argues that Dr. Razdan's failure to warn deprived him of his constitutional right to be free from unjustified intrusions into his body, the right not to be inflicted with pain and the right to sufficient information to intelligently exercise these rights.

Deliberate Indifference Claim

There is nothing within the uncontested facts which would support Hutchinson's claim that Dr. Razdan was deliberately indifferent to his medical needs. To the contrary, the uncontested evidence establishes that the health care services provided by Dr. Razdan properly addressed Hutchinson's medical problems. Hutchinson first complained of blood in his urine. Dr. Razdan correctly diagnosed the problem as bladder stones and performed a procedure to correct the immediate problem. According to the undisputed facts this procedure was a complete success and alleviated Hutchinson's problems urinating. That the initial diagnosis and procedure were proper is supported by the unrebutted affidavits of both Dr. Razdan and Dr. Marshall Kaplan. (DE# 100-5, 100-11).

After alleviating Hutchinson's immediate problem Dr. Razdan further determined that the ultimate cause of Hutchinson's problem was an enlarged prostate. In order to alleviate the problem Dr. Razdan recommended the HoLEAP procedure. As noted in both doctors' unrebutted affidavits, the HoLEAP procedure was both medically indicated and properly performed. Furthermore, the post operative records indicate that the procedure alleviated the symptoms associated with an enlarged prostate in that Hutchinson was able to

10

void his bladder. The notes of Dr. Razdan indicate that Hutchinson was pleased with the result. Nothing within these undisputed facts indicates that Dr. Razdan was indifferent to Hutchinson's medical needs. Thus the defendant is entitled to summary judgment of the claim that he was deliberately indifferent to Hutchinson's serious medical need.

Failure to Provide Adequate Advice for Informed Consent

Hutchinson's claim that Dr. Razdan failed to advise him of the risks of the litholapaxy that was performed on June 10, 2008 is refuted by his own statement of facts. In his statement of facts Hutchinson admits that Dr. Razdan advised him of the risks of the cystoscopy and litholapaxy procedure. (DE# 112, p. 4). Hutchinson states that "Dr. Razdan spent 15 minutes specifically discussing the procedure with me and the risk involved and benefits." He acknowledges that he agreed to undergo the procedure on June 10, 2008 after signing a written consent. Thus any claim that he was not provided information about the cystoscopy and litholopaxy performed on June 10, 2008 is without merit and Dr. Razdan's motion for summary judgment on this claim must be granted as there is no material issue of fact in dispute and the undisputed facts establish that Hutchinson was properly advised.

Hutchinson's claim that Dr. Razdan failed to advise him of the potential risks of the HoLEAP procedure is also refuted by the record. The undisputed facts reflect that Hutchinson signed the consent to surgery. Hutchinson has admitted that he signed the consent form and Dr. Razdan has averred that he advised Hutchinson of the risks of the HoLEAP procedure as well as alternative courses of treatment. Dr. Razdan contemporaneously affirmed that Hutchinson was advised of the risks and alternatives on October 14, 2008. Hutchinson now claims that although he read the consent to surgery

11

form, he did not read it. As noted above he also claims that, despite the signed consent indicating otherwise, the risks and alternatives were not discussed with him.

Even assuming that Hutchinson was not, as he alleges, actually advised of the risks and alternatives he nevertheless can not prevail. It is true that convicted prisoners "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives." White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990). Such information is necessary for the prisoner to make an informed decision whether to accept or reject prescribed treatment. However, the courts have not held that lack of informed consent by a prisoner to medical treatment in and of itself rises to the level of a constitutional violation. See White, 897 F.3d at 114 n.4 (declining to resolve whether a tort of failure to obtain informed consent rises to the level of a constitutional violation). A claim regarding lack of informed consent without more is one of medical negligence, not deliberate indifference and, as indicated herein, negligent conduct by prison officials does not rise to the level of a constitutional violation. See Wright v. Fred Hutchinson Cancer Research Center, 269 F.Supp.2d 1286, 1296 (W.D. Wash. 2002)(holding that defendants' failure to make disclosures necessary to the informed consent process in an experimental therapeutic setting does not implicate rights that are so rooted in the tradition and conscience of our people as to be ranked as fundamental in that a doctor's tortious failure to obtain informed consent is not a threat to our citizens' enjoyment of ordered liberty, even when the doctor is employed by the state). See also Rochell v. Correctional Medical Services, 2006 WL 1422988 (N.D.Miss. 2006), Report and Recommendation Adopted, 2006 WL 1423189 (N.D.Miss. 2006). Thus the failure to advise of the risks

and alternatives cannot ordinarily form the basis of constitutional claim.

Even where the lack of informed consent has been found to be actionable as a constitutional violation, "inadvertent failures to impart medical information cannot form the basis of a constitutional violation." Pabon v. Wright, 459 F.3d 241, 250 (2nd Cir. 2006). In Pabon, the court went to hold that "in order to incur liability a prison official's failure to adequately inform a patient regarding that patient's proposed medical treatment must be done with, at a minimum, deliberate indifference to the prisoner's right to refuse treatment and that simple negligence will not suffice." Id. at 251.

In the instant case the uncontested facts establish that Dr. Razdan was not deliberately indifferent to Hutchinson's right to refuse treatment. On several occasions, beginning with the first procedure and through the HoLEAP procedure, Dr. Razdan was of the impression that Hutchinson had been fully informed of the risks and alternatives. He certified that the risks and alternatives had been explained and did not proceed with the procedure until Hutchinson had executed his consent to the procedure. At best, under these facts, Hutchinson can establish simple negligence, which is not actionable in a § 1983 complaint. Furthermore, Hutchinson, as reflected in the uncontested facts, was given the opportunity to refuse the procedure. He never did so. Nor did Hutchinson express any concern at the time he signed the consent to the procedure. Under these facts it cannot be said that Dr. Razdan was deliberately indifferent to Hutchinson's right to refuse treatment, to the contrary he was aware of the right and gave Hutchinson the opportunity to refuse treatment. Hutchinson's failure to establish that Dr. Razdan was deliberately indifferent to his right to refuse

treatment is fatal to his claim. Thus Dr. Razdan's motion for summary judgment should be granted.

## VI. <u>Conclusion</u>

Based upon the undisputed facts, the undersigned finds the defendant has met his evidentiary burden to establish that the Plaintiff cannot prevail on his claim. The motion for summary judgment filed by the defendant should, therefore, be granted in that the pleadings, together with the affidavits, deposition testimony and documentary exhibits, show that there is no genuine issue as to any material fact, and that the defendant is entitled to judgment as a matter of law. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

## VII. <u>Recommendations</u>

Based upon the foregoing, it is recommended that Defendant Razdan's Motion for Summary Judgment (DE# 100) be **GRANTED** and this case be **dismissed with prejudice**, because Plaintiff has failed to establish any constitutional violation. It is, therefore, further recommended that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 29th day of January, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

14

```
cc:  Andrew Hutchinson, Pro Se
     DC# A115399
     Dade Correctional Institution
     19000 S.W. 377th Street # 300
     Florida City, FL 33034

     Robert E. Paradela, Esq.
     Wicker, Smith O'Hara, McCoy & Ford, P.A.
     515 E. Las Olas Boulevard
     SunTrust Center, Suite 1400
     Fort Lauderdale, FL 33302
```